WILLIAM UMBACH

*v.*

JULIUS UMBACH et al.

[Decided January 13th, 1914.]

1. Under act of April 20th, 1906 (*4 Comp. Stat. 1910 p. 4686 § 35*), providing that any purchaser of real estate at any public sale, with certain exceptions, shall be relieved from his bid if he shall satisfy the court of the existence of any substantial defect in or cloud upon the title rendering it unmarketable, or of the existence of any lien or encumbrance unless a reasonable description of the estate or interest to be sold, and of the defects in title, be inserted in the advertisements and in the conditions of sale, a purchaser is not entitled to be relieved from his bid if the title can be made good at the time of the decree.

2. A purchaser at a partition sale was not entitled to be relieved from his bid because of an erroneous description of the premises, where the description referred to the correct survey which was attached to the decree.

3. The act of February 16th, 1891 (*P. L. 1891 p. 24*), providing that all sales of land made under any order, judgment, or decree of a court shall be confirmed by the court notwithstanding any irregularity in the publication of such sale, provided the officer making the sale shall certify under oath that it was otherwise regular and that the property was sold for a fair price, and the court is satisfied by affidavit that the defect was not injurious to the parties in interest, applies to sales made after its passage, notwithstanding the failure or omission of the commission to include it in the compiled statutes.

4. Where the final decree in a partition suit expressly directed that the deed delivered pursuant to the sale thereunder should be a perpetual bar, both in law and in equity, against all the parties, the estates in curtesy of two defendants were thereby cut off, and the purchaser could not have relief from his bid because of the existence of such estates, especially where such defendants offered to execute releases of their interest without further consideration.

5. That a decree in a partition suit did not specially direct the sale of the estates by the curtesy initiate of certain defendants did not entitle the purchaser to relief from his bid, since the statutes requiring such special directions do not apply to inchoate but only to completed estates.

6. Under the act of April 20th, 1906 (*4 Comp. Stat. 1910 p. 4686 § 35*), providing that any purchaser of real estate, at any public sale with certain exceptions, shall be entitled to be relieved from his bid if, before delivery of the deed, he shall satisfy the court of the existence of any

substantial defect in or cloud upon the title rendering it unmarketable, or of the existence of any lien or encumbrance, unless a reasonable description of the estate or interest to be sold, and of the defects in title and liens or encumbrances with the approximate amount thereof, be inserted in the notices and advertisements required by law and in the conditions of sale, where the decree in a partition suit and the notices and advertisements of sale stated that a mortgage in a specified amount was a lien on the premises, such advertisement of sale was read by the master at the sale in announcing the conditions of sale, and the purchaser signed the conditions of sale to which a copy of the advertisement was annexed, and received the master's receipt, both of which stated the price as the full amount bid, the purchaser was not entitled to be relieved from his contract with the master because of conversations with the complainants and one of the defendants, who also owned the mortgage, from which he was led to believe that the land was to be sold free from the mortgage, or that the mortgage was to be paid out of the purchase-price, whether or not he was entitled to relief as against the complainant and such defendant.

On petition of purchaser and counter petition of complainant. Heard on petitions and answer and affidavits.

*Mr. Edwin B. Goodell,* for the purchaser.

*Mr. Anderson Price,* for the complainant.

EMERY, V. C.

There is in this case an application to be relieved of his bid, made by petition filed in the cause by the purchaser at special master's sale in partition, and a counter petition by the complainant against the purchaser Jacob W. Grissing to compel him to perform the contract of purchase. The petition of the purchaser is filed under the Sales act (Revision), supplementary act approved April 20th, 1906 (*P. L. 1906 p. 269 ch. 144; 4 Comp. Stat. pp. 4635, 4686*), which entitled a purchaser

"to be relieved of his bid, if before the delivery of the deed he shall satisfy the court, by whose authority such sale was made, of the existence of any substantial defect in or cloud upon the title of the premises sold which would render the title unmarketable, or of the existence of any lien or encumbrance thereon, unless a reasonable description of the estate or interest to be sold, and of the defects in title and liens or encumbrances thereon with the approximate amount of said liens and encumbrances, if any, be inserted in the notices and advertisements required by law and in the conditions of sale."

Before the passage of this act, the *caveat emptor* rule applied to judicial sales (*Brady* v. *Carteret Realty Co.* (*Court of Errors and Appeals, 1904*), 67 *N. J. Eq.* (*1 Robb.*) 641, 643; *Podesta* v. *Binns* (*Vice-Chancellor Garrison, 1905*), 69 *N. J. Eq.* (*3 Robb.*) 387), and it was also settled that the purchaser at judicial sales becomes a party to the suit by virtue of his bid and signing the conditions of sale (*Boorum* v. *Tucker* (*Vice-Chancellor Pitney, 1893*), 51 *N. J. Eq.* (*6 Dick.*) 135), and that either party, as well as the officer selling, might file an independent bill, or make summary application in the suit itself for the performance of the contract. *Cropper* v. *Brown* (*Vice-Chancellor Garrison, 1909*), 76 *N. J. Eq.* (*6 Buch.*) 406; *Townshend* v. *Simon* (*Judge Depue, 1876*), 38 *N. J. Law* (*9 Vr.*) 239 (at p. 243). And the rules applicable to the cases of specific performance of contracts strictly *inter partes* are in general enforceable on these applications. *Boorum* v. *Tucker, supra,* and cases cited (at *pp. 139,* &c.) ; *Podesta* v. *Binns, supra.* One of these settled general rules is, that if the title can be made good at the decree, it is sufficient to overcome a valid objection made to the title. *Oakey* v. *Cook* (*Court of Errors and Appeals, 1886*), 41 *N. J. Eq.* (*14 Stew.*) 350, 364; *Agens* v. *Koch* (*Vice-Chancellor Emery, 1908*), 74 *N. J. Eq.* (*4 Buch.*) 528; *Redrow* v. *Sparks* (*Vice-Chancellor Leaming, 1909*), 75 *N. J. Eq.* (*5 Buch.*) 399.

The objections here made to the title are all founded on defects, or alleged defects, which, so far as they exist, can all be removed before or at delivery of the master's deed. The objection of erroneous description of the premises is corrected in the description itself by the reference to the correct survey, which is attached to the decree. The defective advertisement of sale which for a single week was inserted in only one, instead of two, newspapers, has been cured by a special order of confirmation made under the act of February 16th, 1891. *P. L. 1891 p. 24.* This act applies to sales made after its passage, as I held in *Polhemis* v. *Priscilla* (*1903*), 54 *Atl. Rep. 141.* This decision, made after full hearing, cannot be considered as overruled by the failure or omission of the commission to include the act in the compiled statutes. This compilation is necessarily *ex parte*

and not intended to formally adjudicate on questions like those now involved in reference to the application of this act.

It is also objected that this decree for sale in partition fails to direct, as the statute requires, that the estates in curtesy of two of the defendants should be sold. The final decree, however, directs expressly that the deed delivered, pursuant to the sale under the decree, shall be a perpetual bar both in law and equity against all the parties, and it may be fairly claimed, I think, that under such decree the deed will cut off such estates in curtesy. But to avoid any question, these two tenants by the curtesy now voluntarily offer to execute and deliver with the master's deed and without further consideration therefor, releases of their respective interests and estates. This removes this objection. The further objection that the decree does not specially direct the sale of the estates by the curtesy initiate of other defendants is not well founded. The statutes relied on as requiring such special directions in the decree do not apply to inchoate, but only to completed estates, and these parties defendant having inchoate interests are barred by the general terms of the decree.

The objection mainly insisted on at the hearing to relieve the purchaser from his bid, related to the lien of a $1,000 mortgage on the premises, held by Julius Umbach, one of the parties defendant. The purchaser now claims that his bid of $7,000 for the property, at which price it was struck off and sold to him, was intended to be for the property free of the $1,000 mortgage, and he therefore asks to be relieved of his bid. The decree for sale declared that this mortgage of $1,000, with interest from July 15th, 1905, was a lien or claim on the premises directed to be sold, and also that they were subject to a right of way of the Caldwell Railway Company under an agreement dated November 5th, 1890, made with the decedent. The notices and advertisements of sale stated expressly that a mortgage made by Henry Umbach, deceased, to Julius Umbach for $1,000, with interest from July 15th, 1905, "is a lien upon the premises described," and also that they were subject to the right of way above mentioned. The sale by the special master took place at the place and at the time advertised, the court house, in Newark, September 17th, 1913, and the advertisement of sale, including this

statement as to liens, was read by the master in announcing the conditions of sale. According to one affidavit, it was also specially announced that the sale was to be subject to this mortgage of $1,000 and to the right of way. The special master himself so understood the terms of sale, and during the sale nothing seems to have been brought to his attention, indicating that any other view was taken by any bidder. The purchaser, Mr. Grissing, stood in front of the master while the description of the premises and conditions of sale were being read, including these statements as to the mortgage and right of way, but made no inquiry of the master in reference to the sale being subject to the lien of the mortgage. The bidding started at $5,000 by a Mr. Cowie, and was continued by bidding between Grissing and Julius Umbach, who was the mortgagee, and also one of the heirs, until it ran up to $7,000, at which figure it was struck off to Grissing. He then signed the written conditions of sale, to which a copy of the advertisement was annexed, as follows: "I hereby acknowledge myself to be the purchaser of tract of land and premises described in the annexed advertisement for the sum of $7,000," and on the 19th of September paid to the master $1,000, for which the master signed a receipt at the bottom of the conditions of sale, as received

"on account of the purchase price of the lands and premises described in the annexed advertisement and referred to in the foregoing conditions of sale, upon the terms and conditions therein specified. The balance ($6,000) six thousand dollars to be paid as therein provided at the time and manner therein stated."

These conditions of sale signed both by the master and the purchaser make the written contract of sale of the lands required by the statute of frauds, and there can be no question, I think, that so far as the case is to be considered as one of mutual contract between the master and the purchaser evidenced by the writing, the sale was made and intended to be made subject to the mortgage of $1,000. No relief from the bid based on the act of 1906 can be given, because the requirements of the statute in reference to the existence of liens upon premises sold at judicial sale were complied with by the statement or reasonable description of the lien on the premises to be sold, with its approximate

amount inserted in the notices and advertisements and in the conditions of sale. These statutory requirements being fulfilled, the purchaser fails to bring himself within the extension of the statute to relief from purchase at a judicial sale. The purchaser does not, either in his petition or in his answer to complainant's petition, attempt to make a case within the statute, by alleging or setting up that the existence of this lien of the mortgage upon the premises sold was not disclosed by the advertisements of sale and by the conditions of sale which he signed. His claim for relief is that by reason of conversations had on the day of sale and before the sale between himself and Julius Umbach, one of the defendants, and the mortgagor, in which complainant participated, relating to the amount which he (Grissing) would bid on the property, he (Grissing) told them he would not bid over $7,000 for a free and clear title, and that subsequently when he read the advertisement mentioning the mortgage as a lien, he was again told by Julius Umbach that the price bid for the property was for a deed free and clear of all encumbrances. Julius Umbach, the owner of the mortgage, and of one-seventh interest in the premises, was prepared to bid on the property in the protection of his double interest, and did in fact bid against Grissing, they being two probable purchasers. In this aspect of the case, that of ascertaining the amount either would bid, the interest of Julius Umbach, as well as that of Grissing, apparently was adverse to that of the other parties interested in the sale, some of whom were infants, and the understanding with Julius about the status of his mortgage, even if Grissing afterwards acted on it, cannot be considered as any sufficient reason for relieving him from his contract with the master who had prepared the advertisement and conditions and had the sole control and conduct of the sale for the benefit of all parties.

The affidavit of Cowie, one of the petitioner's witnesses, shows that in a talk with Julius Umbach, who himself proposed to bid on the property and was willing to bid $7,000 for it as his highest price, Julius said to Grissing: "You shall have the property for $7,000, unless somebody bids higher, and that after it got up to $7,000, he (Julius) would stop bidding."

After this talk by themselves, the four persons went to the

corridor, where the property was put up for sale by the master, and the advertisements and conditions of sale were read. This witness Cowie started the bidding at $5,000, and then Grissing and Julius Umbach bid against each other until Grissing bid $7,000, when it was struck off to Grissing. If any understanding or arrangement was reached before the sale that Grissing should have the property for $7,000, this was a private understanding between the parties making it, and under the circumstances, no understanding between these parties as to the price to be paid for a clear title should be allowed to affect the sale by the master in reference to the question whether the price bid to the master did or did not include the payment of the mortgage lien. The advertisements and the conditions settled that question, and if the purchaser without any inquiry of the master relied on any other statements, it was at his own risk.

From the petitioner's own affidavit as to his conversation with Julius before the sale, it appears that the latter referred to a diversity or division of interests in the property among the heirs, and also in reference to his mortgage, and it further appears that after Julius made an agreement with Grissing to stop bidding at $7,000, they both went in to carry out this arrangement. The purchaser distinctly says:

"That he notices the advertisement mentioned a $1,000 mortgage and did not say that the property was to be sold subject to the mortgage, and that having come to an understanding, as I supposed, with the parties in interest, as to what my bid would mean, I paid no further attention to the advertisement."

Both Julius and William Umbach in their affidavits deny any understanding that the property was not to be sold subject to the mortgage and insist that Grissing understood at the time that it was sold subject to the lien. These conflicting affidavits are perhaps reconcilable by the view that it may have been the expectation of these three persons that although the mortgage was a lien on the premises, yet it was to be paid out of the purchase price, and that the bid of $7,000 for a "good" or "clear" title was made on that basis. This might show a case which, as between the purchaser and William and Julius Umbach, and if it were a matter to be settled between them alone, might entitle

the purchaser to claim that the mortgage, although a lien, should be paid out of the purchase price bid, as the court is expressly authorized to do, by the statute of 1906, and to require the bid to stand. But this situation, if it existed between these persons, could not affect the master and the contract with him, nor does it entitle the purchaser to be relieved from his contract made with the master for the benefit of all the parties to the suit, without any knowledge of or participation in this private arrangement. This contract of the purchaser with the master was at a sale in which the master himself complied with the provisions of the statute relating to the statement of the existence of the lien, and purchasers about to bid were notified by him of the existence of the mortgage as a lien on the premises.

This contract with the master should therefore be specifically performed.

The petition of the purchaser should be dismissed and that of the complainant granted. At the time of settling order I will hear counsel on the question whether the orders should be made without prejudice to any application for relief, either in this suit or otherwise, by the purchaser against either Julius or William Umbach, individually. On his present application the complainant represents the master and all the parties to the suit, and this case must be decided upon those rights.